Your Honor, this is the first case of the morning called 2-12-4-P-8 between the State of Illinois v. Shannon v. Cheser On behalf of the Appellant, Mr. Jason Stevens and on behalf of the Athlete, Ms. Helene Diaz Good morning, Counsel Good morning, Mr. Stevens Good morning My understanding is that Your Honors are not in need of a brief recitation of the facts, is that correct? That's correct Thank you Judge, Judges, taking all of the evidence at trial in this case on the leg most favorable to the prosecution our argument is that no rational trier of fact could have found Mr. Shannon Cheser guilty beyond a reasonable doubt of the crime of attempt criminal sexual abuse Perhaps the most compelling reason that a trier of fact could not have reached such a conclusion is because attempt being a specific intent crime requires the State to prove that Mr. Cheser had a subjective belief that on the night in question, Ms. Gardena was unable to give knowing consent As you know, attempt requires a conscious objective on the part of the alleged perpetrator to accomplish a result In this case, for Mr. Cheser to have had a conscious objective to perform a sexual act at a time that Ms. Gardena was unable to consent he would have had to have subjectively believed in the first place that Ms. Gardena was unable to consent Well, how intoxicated must an individual be before he or she is unable to give knowing consent? That's a very difficult question to answer because it really does change on a case-by-case basis Certain individuals could consume alcohol and have the capacity to consent while other individuals, I believe, could consume the same amount of alcohol and not have the capacity to consent I think what's important in evaluating whether or not it's been proven that an individual lacked the capacity to consent is what do we know about that individual's level of intoxication? In other words, are there third-party witnesses who could attest that Ms. Gardena couldn't walk, that she needed to be carried, that she was hobbling or was she, in fact, walking under her own two feet in a normal, unrestricted fashion? We don't know because the State presented no evidence as to that Even if we took all of the evidence that the State presented and assumed that it were true there was no evidence pertaining to Mr. Cheser's state of mind, what he thought We don't know what Mr. Cheser saw that evening But we know she blacked out. Isn't that correct? We know that she doesn't remember what happened. We know that Well, isn't that a blackout? I guess you could call that a blackout, yes Okay However, I would argue that if lack of memory were tantamount to lack of capacity to consent then any individual waking up in bed with a partner after a wild night that they couldn't remember could later on claim to be a victim of sexual abuse There is no evidence that Mr. Cheser believed that Ms. Gardena was unable to consent No statements from Mr. Cheser stating she appeared a little tipsy, maybe I should have refrained There was no testimony, as I said from a third party, attesting to Ms. Gardena's level of intoxication She could have been speaking in coherent sentences, she could have been talking intelligently She could have been walking under her own two feet She could have appeared completely lucid that evening And as you know, it was the State's burden to prove that she was intoxicated to a level that she was unable to consent And there is nothing in the record as to Ms. Gardena's level of intoxication She herself testified that she was very drunk and that she was intoxicated, isn't that correct? That is correct However, very drunk does not necessarily equate to lack of ability to consent I think many individuals consent to sexual encounters when they are in fact very drunk However, I think most importantly, the State presented no evidence, direct or circumstantial, that Mr. Cheser suspected Ms. Gardena was not able to consent His subjective belief is a required element of the charge in this particular case And the intent element of this allegation remains unproven The record is simply empty as to the mandatory element of specific intent Could you read something into the prior remarks that he had made to her? Judge, those prior remarks, you know, they occurred at some other time, they occurred at some other place But it is certainly indicative It is certainly indicative that there may have been a prior flirtation between these two individuals on a prior date It did not appear to be between The testimony is, he made the remark she was uncomfortable That is not a flirtation between I would agree that that statement is correct I would also say that Ms. Gardena felt comfortable enough to accompany Mr. Cheser alone to a fair and to drink with him Weren't neighbors supposed to have been going with him and bailed on them at the last minute? Correct Are you in agreement, though, that those remarks that he made to her could be viewed as circumstantial evidence of his intent? Well, I think that they could be viewed as circumstantial evidence that he found her attractive But I don't believe that they could be viewed as circumstantial evidence that he planned to get her drunk to a degree that she was unable to consent and take advantage of her sexually I think that is a bit too far of a leap of logic for us to take Do we know when he made these remarks to her with respect to the date that they went to the fair? What time interval was there? Judge, I believe, and I could be wrong, I believe it was approximately a month earlier I would have to double check the record What's interesting in this particular case is that the State presented no physical evidence supporting the proposition that Ms. Gardena was unable to consent The State relied on testimonial evidence from Jessica Gardena, the 28-year-old complaining witness, that she accompanied Mr. Cheser to a bar and became intoxicated and had no memory of the remainder of the evening But the State did not call one witness who was able to give testimonial evidence as to, one, as I stated before, how Ms. Gardena was behaving There was no evidence that Ms. Gardena was too intoxicated to know what she was doing or that she lacked the capacity to consent All she said was that she couldn't remember And as I argued before, I don't believe lack of memory satisfies the State's burden of proof that she also lacked the capacity to consent Otherwise, any individual waking up with a partner after a while, even you could not remember Is it your position then that this crime can never be proven by the State unless there's a third-party witness who observes someone incapacitated, that would be victim incapacitated? That's a good question, and I would say no I believe the testimony from the victim herself, if the victim were to express the opinion, perhaps at trial, that she was too intoxicated to consent If the victim were to testify, you know, I was drinking, I was having trouble walking, I was having trouble talking, I didn't know what I was doing, I was in... How would you testify to that if you didn't know what you were doing? Well, you really can't That's my point How would the State ever be able to prove this offense in the absence of a third-party witness? Well, if there was no third-party witness and the purported victim didn't remember, I guess you would have to turn to the perpetrator and look at his actions Did he do anything that evening, or did he make any statements indicative of taking advantage of the individual? Did he make any statements like, yeah, she was a little bit tipsy, I had to carry her home, statements to that effect But if the alleged victim is unable to testify as to what happened, and the defendant made no statements as to what happened, and no third-party witnesses testified as to what happened I think that there's a vacuum in the case And I think it's important to note that administering oral sex on an intoxicated individual does not constitute a crime unless the individual is too intoxicated to consent None of the State's witnesses in this case, none of the State's witnesses even rendered the opinion that Ms. Scardino was unable to consent, including Ms. Scardino herself Now, she couldn't remember, but Mr. Chesser did not express words to that effect, and no third-party witnesses expressed words to that effect What was interesting in the case that I cited in my reply, in which this Court found that the victim did lack the capacity to consent, it was a 15-year-old victim That's Fisher Fisher, yes She consumed, I believe There was a third-party witness There was a third-party witness Who observed the act and the fact that she was virtually unconscious, isn't that true? Yes, that's true However, in that particular case, the defendant was having intercourse with her in a kitchen, which was not appropriate, unlike this case where the alleged sexual encounter occurred in the complainant's bedroom Also, there was testimony that she was unable to form complete sentences, that she drank 18 to 19 cans of beer, that she was crying, asking to go home What inferences can be drawn, if any, from the actions of both parties after the event? Well, I think that we could certainly draw the inference on the part of Ms. Scardino, that she had what I want to call emphatic, emotional, after-the-fact regret over the circumstances of what happened And I think, with regards to Mr. Chesser, he had the same regret, and he had a fear that his marriage may be over I think that we could certainly glean those references But it's important also to note the trial court's acknowledgment There's inconsistent verdicts here, as I argued in my brief The trial court acknowledged that the State failed to prove the conduct alleged in the battery charge beyond a reasonable doubt Now, the only conduct alleged in the battery charge against Mr. Chesser was that he placed his mouth on Ms. Scardino's vagina That was the only conduct alleged in the battery charge, and the trial court found that that was not proven beyond a reasonable doubt The only conduct alleged in the attempt criminal sexual abuse charge that was upheld was that Mr. Chesser performed cunnilingus on Ms. Scardino Isn't it a substantial step? Isn't that why we call it attempt? In fact, your client could have been charged with a much higher class of offense He could have, but I also believe that the State is required to prove the factual assertions in their complaint beyond a reasonable doubt Whatever they choose those factual assertions to be In this case, they chose to assert that Mr. Chesser performed cunnilingus on Ms. Scardino And the trial court found that the State did not prove beyond a reasonable doubt that Mr. Chesser placed his mouth on Ms. Scardino's vagina Therefore, on the one hand, the trial court found that the State failed to prove that Mr. Chesser placed his mouth on Ms. Scardino's vagina But on the other hand, the trial court found that the State proved beyond a reasonable doubt that Mr. Chesser performed cunnilingus on Ms. Scardino At a time when Ms. Scardino was unable to consent What's interesting is that the battery charge is actually the easier charge to prove Because the battery charge only would require the State to prove conduct and not Mr. Chesser's state of mind The attempt criminal sexual abuse charge requires the State to prove the conduct alleged in the complaint And because it's an attempt charge, the State was also required to prove subjective criminal intent on the part of Mr. Chesser So if the State failed to prove the conduct in the battery charge, it would actually be Notably, to prove the crime of attempt criminal sexual abuse, the State was required to prove Mr. Chesser's state of mind In addition to the conduct, which makes it more difficult to prove than the battery charge in which Mr. Chesser was found not guilty As you know, this district has found in the past that logical inconsistency is a factor which contributes to the existence of reasonable doubt And should be taken into consideration by a reviewing court in evaluating the defendant's contention that he was not proved guilty beyond a reasonable doubt In summary, as I mentioned before, if lack of memory were tantamount to lack of consent Then any individual waking up in bed with a partner who couldn't remember the previous evening could claim to be a victim of criminal sexual abuse If emotional emphatic after the fact regret was tantamount to lack of consent Then any individual, male or female, who regretted a sexual encounter could also claim to be a victim of sexual abuse Here we have lack of memory coupled with emotional emphatic after the fact regret, but we have no proof of a crime Does knowing consent require the ability to make a reasoned judgment about the consequences of a particular act? Absolutely. I think that in all circumstances, you know, where a sexual encounter is occurring An individual has the responsibility to make a reasonable judgment as to whether or not the individual he is engaged with is capable of consenting If someone's intoxicated, can they make a reasoned judgment? Sometimes they can, sometimes they can't, I think And if we're going to find someone guilty beyond a reasonable doubt, I think there needs to be proof that under these circumstances the level of intoxication was to such a degree that lack of capacity was manifest Because in some cases you could be intoxicated in consent, and in some cases you could be intoxicated to a degree where you cannot give knowing consent Thank you very much Ms. Diaz  Good morning I would like to start by addressing counsel's arguments with regard to consent And the people in this case charged the defendant with attempt criminal sexual abuse I'm going to ask you to speak up. We have a microphone here, but it's a big, large room We have a lot of people in the back there trying to hear you as well as we here in front, so please speak loudly Okay. The people in this case charged the defendant with attempt criminal sexual abuse Which means that in order to prove that charge, the people had to show that the defendant took a substantial step to commit an act of sexual conduct with the victim during a time when she was either unable to understand the nature of the act or unable to give proper consent And when the issue is whether somebody was in a proper position to give consent because she was too intoxicated The question should be, as was said in Fisher, was the defendant's belief that the victim had consented or that the other individual had consented reasonable Well, Fisher, it was an easy situation, wasn't it? I mean, she was unconscious So that's not the situation we have here. So where do we draw the line here? I don't think it's a clear line to be drawn, but in this case she testified that after she felt pretty drunk after her first few drinks the first time around and then she testified that she blacked out at some point after they had returned to the taste of Roselle the second time So we know she was intoxicated and she didn't remember. How does that equate to unable to give knowing consent? Well, the question, I think, is not whether she necessarily purported to give consent but whether his belief in whether or not she consented was reasonable Why not? What evidence was there that the state put on that it couldn't have been a reasonable observation or conclusion? Well, he was with her. According to her testimony, he accompanied her to the taste of Roselle He was with her during both times when they attended the taste of Roselle He purchased the drinks for her so he was able to observe her demeanor before they arrived at the taste of Roselle And then she testified that she blacked out while they were at the taste of Roselle and before returning home And she doesn't remember returning home. She testified that she didn't know anybody in Roselle except for the Chesser family And from that, I think a rational trier of fact could have inferred that the defendant accompanied her to his house So he should have been able to observe her demeanor and somebody who, as she testified, she blacked out He should have been able to know that she was not in a position to give proper consent Well, blacked out means she didn't remember what happened It doesn't mean she was unconscious, correct? Not necessarily, no. It doesn't mean she didn't testify to being unconscious She testified to being blacked out. She testified that she didn't remember how she got home But the fact that she went to the taste of Roselle So she could have walked home, correct? She could have walked home, but the next thing she remembers is waking up in her bed with the defendant And I think from the fact that she doesn't remember what happened from the time she left the bar At which point she had testified that at that point she had been blacked out and pretty drunk and intoxicated And from that point, she couldn't remember what happened until the next morning When she woke up and found the defendant in her bed I think it's pretty clear, or it should have been pretty clear to the defendant that she could not give consent Well, how do we know we don't have a situation where she did consent but regretted it later As counsel argued might be the case Or that these facts were consistent with that conclusion and scenario How do we know that that isn't the situation and that's not the inference that should be drawn? But if she had, that's not in the record that she had given consent She testified that she did not remember giving consent And I understand that not remembering doesn't mean that she didn't give consent Well, we're talking about her actions afterwards Right, but I think the issue here is that the defendant could not have formed a reasonable belief that she had consented And in Fisher it says that when a defendant cannot form a reasonable belief that the person consented He must refrain from taking advantage of the individual And I don't see how when a defendant is present when somebody blacks out When the defendant presumably accompanies that victim home And sees that she does not know how to get home And doesn't know where she's going and doesn't recall the particular events of the night How that defendant could form a reasonable belief that she's in a position to consent Did anybody ask her what she meant by blackout? No Did anyone say, is it you can't remember versus She said she, after she blacked out she could not remember what happened afterwards And that the next thing she remembers is waking up the next morning and seeing the defendant in her bed But she said that after she blacked out she could not recall all of the events of that night And all of the things that happened subsequently except for the recollection that she had That the defendant did perform oral sex on her that evening Did you ever ask the defendant how she got home? That was not in the record So your point basically boils down to whether the rational trier of fact, that is a bench trial here Correct Whether the trial judge could reasonably conclude that the defendant Let me back up here Whether rational trier of fact could conclude that she did not knowingly give consent Correct That's your, putting it in the framework of the standard of review Yes, it's that and in addition I would like to note that it's important that the defendant could not have formed a reasonable belief That she consented because he was able to observe her demeanor before Because she blacked out, that's your point Because she blacked out you're saying that he couldn't have formed a reasonable belief that she could consent Because someone blacked out Because she blacked out, because she couldn't remember getting home And from that I think a reasonable inference that the trier of fact could have drawn is that he was the one who accompanied her home Because she testified that she did not know anybody in Roselle She didn't have any friends at the taste of Roselle And she departed from the defendant's house to the taste of Roselle with the defendant And then wound up in her bed the next morning with the defendant So I think a rational trier of fact could have inferred that it was the defendant who accompanied her home And if he did accompany her home he should have been able to observe her demeanor And notice that she was not in a proper position or in a position to give proper consent And she did testify to being pretty drunk after the first few drinks And I think the words used were either pretty intoxicated or very intoxicated And then subsequently she testified that she blacked out So she didn't testify about what her mental state was when the sexual activity was going on No, she doesn't remember the specifics except for the fact that she does recall that the defendant performed oral sex on her that evening Well, if she is normally a light drinker Is it possible that a relatively slight impairment would cause her to say she felt pretty drunk? I believe so, your honor I believe that if she's normally a light drinker a slight impairment may have caused her to say that she's pretty drunk But the fact is she's still impaired and is not in a position to give proper consent Well, how do you know that she wasn't capable of making a reasoned judgment? I think What evidence supports that inference? That she wasn't able to, I'm sorry Make a reasoned judgment Make a reasoned judgment I think the fact that she couldn't even remember how to get back to her house I think the fact that she couldn't recall all of the specific events of that evening I think somebody who is not capable of pinpointing exactly what is happening and giving an exact timeline Is not in a position to reasonably consent Well, you're equating a blackout with cognitive ability, right? In this case, taking all of her testimony, taking all of her testimony together, yes And what evidence did the state present of the link between a blackout and cognitive ability? In the record, there was not Right, a layperson certainly can make the inference and see that somebody is intoxicated But don't we need expert testimony on the effect on cognitive ability? I am not sure that expert, that an expert witness would have been necessary The comment, you're saying a layperson could make those conclusions I think so And I think, in the people's opinion, I think that a layperson should be able to see By observing somebody's demeanor, whether or not that person is in a position to give reasonable consent Without having an expert testify as to her cognitive abilities when she blacked out Well, if someone is intoxicated, presumably their inhibitions are lessened, right? Presumably, yes And would that be enough to support a finding that she was unable to give knowing consent if she had lowered inhibitions? I think if she had lowered inhibitions, it may have appeared It's possible that it may have appeared that she was actually giving consent if her inhibitions were lowered But I don't think that that's a reasonable thing for an individual to believe When he has been able to observe her conduct throughout the entire evening Before she left for the taste of Roselle, before she had actually had any drinks And then her conduct as it progressed or digressed into blacking out I think that regardless of where her inhibitions took her I don't think a reasonable belief in consent could have been formed Is a blackout the same thing as amnesia? I do not know the answer to that I would be happy to look into that Your honors would wish me to do so Well, isn't the point what she meant when she testified to it? I'm sorry Not what we objectively, you know, looking back say, well, blackout means this Isn't the point what she meant when she used the word? The people would argue that, yes, it's the point It's what she meant And what she meant was, I don't remember the specific events of that evening Because I was intoxicated to the point where I blacked out Because her statement that she blacked out followed some statements Which included, I was pretty drunk, I was intoxicated, and then I blacked out So I think it's a reasonable inference to make That a trier of fact could have made the reasonable inference That by blacking out, she meant she was not in a position To understand the nature of the acts that were happening throughout the course of that evening What's the difference between a lack of memory and blacking out? I would suggest that somebody who blacks out Also experiences a lack of memory to some degree Well, counsel's point is well taken Everyone who wakes up the next morning and can't remember what happened Was not necessarily the victim of a criminal sexual abuse Do you agree or disagree with that? I agree with that But I think So what's the difference between a lack of memory and blacking out? It appears that you're trying to get us to draw a distinction I agree that not everybody who wakes up the next morning after blackout And has a moment of panic or regret Was necessarily the victim of sexual abuse However, I think that's where the defendant's belief And her ability to consent comes in Given the facts of this case, given the fact that Given the relationship that the defendant and the victim had Which was, I mean she lived with her aunt and her uncle I don't think, I think that in itself Suggests that in some way He shouldn't have formed a reasonable belief That she was consenting And then that coupled with her behavior that evening And Because she lived with them? Not because she lived with them But because he was her uncle And although inappropriate comment He was her uncle by marriage By marriage Correct And would you like me to continue? Is your finish? I'm sorry I'm just going to let you finish your sentence, your thought here Not necessarily just because Yes, he was her uncle by marriage There was a relationship of trust And yes, she testified that she had felt uncomfortable With comments that were made before But I think this is a situation where It's not just a matter of somebody waking up the next morning And panicking It's a situation where consent Could not have reasonably been perceived You're trying to distinguish Had she met some guy at the Taste of Roselle And wound up with a stranger You're saying the absence Or the presence of this ongoing relationship That she knows that he's married to her aunt Right? Right Okay That that makes a distinction here That it's more It's less likely that The defendant could reasonably conclude that she consented Correct I don't think it's dispositive But I think it is less likely Because I think that even if she had met somebody Somebody with whom she did not have An established relationship She still could have been A victim of criminal sexual abuse Could have been But your point is The fact that she had this ongoing relationship She was living there Correct And presumably knew his wife Correct Throughout her life Correct That that makes it less likely Yes That she would have consented And something the defendant should have known Is that your point? That is Okay All right So I understand Do you know when he made these statements? I believe as counsel said It was a month or two Okay Before this incident I do have one final question What do you make of her conduct afterwards? The next day I think her conduct afterwards If I think it indicates that she was not a consenting participant Even had she been in a position Where she could have offered proper consent I think her conduct afterwards Would Provide some doubt Regarding that I mean she told her boyfriend immediately She washed the sheets She washed her clothes She testified numerous times to being disgusted She was frantic Why is it not as consistent With someone who gave consent But who had regrets later And realized All these other factors we've been talking about That it might have been inappropriate I think it could be consistent With somebody who had regrets later But I think if we look at the Totality of things here From The time They Attended the taste of Ruzel To the time where she woke up the next morning I think if we take all of that And couple that with her behavior After he left her bedroom I think it goes to show That she was not a willing participant  But she was not A willing participant in this encounter Thank you very much We would ask this court to Perform the judgment Thank you so much Mr. Stevens Thank you Your Honor, just to respond to a couple of points Made by the prosecution The prosecution Stated several times that Ms. Scardina Could not remember the evening I do want to point out that there was a ray of light In her memory She did testify that she recalled The action itself That Mr. Chester was performing Oral sex on her She said that she had an independent recollection Of that happening And Your Honor posed a very important question Which was, what was her state of mind What was Ms. Scardina's state of mind As the sexual act was occurring And she was questioned With regards to her state of mind at trial She stated that she had Although she remembered it happening She had no memory of saying stop She had no memory of being physically restrained And she had no memory of saying no Yet she remembered it happening So there was a ray of light In her memory And that ray of light did not include Anything that would lead us to believe That she was not consenting As it was happening You're not saying that the absence of no Equals consent, are you In all situations Not in all situations, no Also the state Mentioned several times And I think this is extremely, extremely important That Mr. Chester was observing Ms. Scardina's demeanor Throughout the evening The state said several times that Mr. Chester Had the opportunity to Perceive Ms. Scardina's Demeanor throughout the evening The problem is We don't know what Mr. Chester Was seeing or what he was perceiving There's no evidence in the record That Ms. Scardina For all we know, Mr. Chester was perceiving A lucid Coherent individual Who was able to walk, talk And speak As lucid as anybody else And I don't think it's fair to blame Mr. Chester The state's arguing that he made an unreasonable Judgment with regards to Ms. Scardina's ability to consent How could we blame Mr. Chester for making an unreasonable judgment Or claim that it's been proven That he made an unreasonable judgment on that point When we don't know what his judgment was based on Because we don't know what he was looking at We don't know what he was listening to We don't know what he based his judgment on His judgment could have been based on An individual who was behaving Perfectly sober We don't know, the record's empty on that point And finally The state mentioned that The state was required to prove A substantial step Well, the complaint They could have chosen what the substantial step Was in the charge And they chose that that substantial step Was the act of performing Cunnilingus on Ms. Scardina And the trial judge Found beyond a reasonable doubt that That conduct Was not proven beyond a reasonable doubt When he found Mr. Chester not guilty of the battery charge Which alleged that he placed his mouth On Ms. Scardina's vagina And for those reasons I ask that you Reverse Thank you Thank you very much Thank you counsel at this time The court will take the matter under advisement And render a decision in due course We stand in recess until the next case